UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAW ENFORCEMENT OFFICERS
SECURITY UNIONS, et al.

      Plaintiffs,

v.

INTERNATIONAL UNIONS,
SECURITY POLICE AND FIRE
PROFESSIONALS OF AMERICA, et
al.,

      Defendants.

_____/

Case No. 20-12544

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' PARTIAL MOTION TO DISMISS [ECF NO. 12]**

**I. INTRODUCTION**

Plaintiffs filed suit against Defendants alleging defamation, false light,
tortious interference, and a violation of the Digital Millennium Copyright Act
("DMCA").  Defendants filed a partial motion to dismiss that is presently before
this court.  Defendants request that this court dismiss the majority of the
defamation claims that comprise counts I and II of Plaintiffs' amended complaint.
Defendants also move this court to dismiss Plaintiffs' tortious interference and
DMCA claims.  For the reasons that follow, the court **GRANTS IN PART AND
DENIES IN PART** Defendants' motion.

-1-

## II. FACTUAL BACKGROUND

Plaintiffs in this action are the Law Enforcement Officers Security Unions ("LEOSU") and Steve Maritas. Maritas is the founder of LEOSU. Defendants are the International Unions, Security Police and Fire Professionals of America ("SPFPA"), its President David Hickey, and SPFPA's employee Dwayne Phillips. Maritas was formerly a member of SPFPA but left SPFPA in 2013 and founded LEOSU in 2015. (ECF No. 8, PageID.542). SPFPA and LEOSU compete in union elections to gain members. (*See* ECF No. 8, PageID.542).

Plaintiffs allege that Defendants posted untrue and misleading statements about LEOSU because LEOSU repeatedly defeats SPFPA in union elections. (*Id.* at PageID.542). Plaintiffs filed suit against Defendants on September 16, 2020, and amended their complaint ("FAC") on November 3, 2020. (ECF No. 8). Count I alleges defamation; count II alleges false light; count III alleges tortious interference with a contract or advantageous business relationship/expectancy; count IV alleges a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 512(f); and count V requests a permanent injunction to require Defendants to refrain from publishing any more defamatory statements. (*Id.*).

Prior to the instant suit, Defendants SPFPA and Hickey filed a separate lawsuit ("the SPFPA lawsuit") against Plaintiffs LEOSU, Maritas, and other individuals in 2019 alleging defamation, false light, tortious interference, a

violation of the DMCA, and requesting permanent injunctive relief.  *SPFPA et al. v. Maritas et al.*, 19-cv-10743.  SPFPA's lawsuit (alternately "the 2019 lawsuit") alleges that LEOSU, Maritas, and others published defamatory statements about SPFPA.  (*SPFPA et al. v. Maritas et al.*, 19-cv-10743, ECF No. 13).  SPFPA's lawsuit is a companion case to the present case filed by LEOSU and Maritas.

Defendants' partial motion to dismiss is fully briefed and ready for the court's consideration.  (ECF Nos. 8, 13, 14).  Pursuant to E.D. Mich. L.R. 7.1(f)(2), the court determined that oral argument was not necessary.  (ECF No. 15).  For the reasons discussed herein, the court **GRANTS IN PART AND DENIES IN PART** Defendants' motion.  The court **DISMISSES** the majority of the defamation/false light claims identified in its FAC as detailed in this order, but **DOES NOT DISMISS** the defamation/false light claims for any statements posted after September 6, 2019 or for statements with an unclear date of publication.  The court **DISMISSES** Plaintiff's tortious interference with a contract claim, but not its tortious interference with business relationships claim.  The court **DOES NOT DISMISS** Plaintiffs' DMCA claim.

## III. LEGAL STANDARD

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.

-3-

2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This

standard does not require "detailed factual allegations."  *Id.*  However, it does

require more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action."  *Id.*

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss.  The

court must construe the complaint in favor of the plaintiff, accept the allegations of

the complaint as true, and determine whether plaintiff's factual allegations present

plausible claims.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a

complaint must "allege enough facts to make it plausible that the defendant bears

legal liability."  *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).  The

facts need to make it more than "merely possible that the defendant is liable; they

must make it plausible."  *Id.*  "Bare assertions of legal liability absent some

corresponding facts are insufficient to state a claim."  *Id.*  A claim will be

dismissed "if the facts as alleged are insufficient to make a valid claim or if the

claim shows on its face that relief is barred by an affirmative defense."  *Riverview

Health Inst., LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## IV. DISCUSSION

### A. Counts I and II

Count I of Plaintiffs' amended complaint brings a defamation claim against

Defendants.  (ECF No. 8, PageID.544).  Count II of the amended complaint brings

a false light claim against Defendants.  (*Id.* at PageID.545).  Defendants' motion argues that most of the alleged defamatory statements that are central to counts I and II of the amended complaint are barred due to the statute of limitations and because they are compulsory counterclaims that Plaintiffs failed to bring in the 2019 companion case to this matter.   The court assesses each of Defendants' arguments below.

### 1.  Pleading Standard

As an initial matter, the parties disagree about what pleading standard applies to the FAC for the defamation claims—Fed. R. Civ. P. 8(a)(2), or the heightened pleading standard that Michigan law applies to defamation claims. Defendants contend that under Michigan law, a heightened standard applies to defamation claims.  (ECF No. 12, PageID.1244).  But they admit that federal courts in Michigan are split on whether the heightened pleading standard applies to defamation claims filed in federal court.  (*Id.* at PageID.1245).  Plaintiffs, on the other hand, say that they were not required to meet the higher pleading requirement in the FAC.  (ECF No. 13, PageID.1526–27).

Courts within the Eastern District of Michigan are indeed split about whether the higher pleading standard applies to defamation claims filed in federal court. *Compare Williams v. Detroit Bd. of Educ.*, 523 F. Supp. 2d 602, 606 (E.D. Mich. 2007), *aff'd*, 306 F. App'x 943 (6th Cir. 2009) (concluding that defamation

claims should be pleaded with the higher standard), *with State Farm Fire & Cas. Co. v. Allied & Assocs.*, 860 F. Supp. 2d 432, 447 (E.D. Mich. 2012) (stating that defamation claims did not require a heightened pleading standard).

Nonetheless, the Sixth Circuit has routinely concluded that defamation claims filed in federal courts in Michigan should be pleaded with the requisite specificity.  According to the Sixth Circuit, requisite specificity includes specifying the language alleged to be defamatory, and identifying where, when, or to whom the defamatory words were published.  *See, e.g.*, *Adamo Demolition Co. v. Int'l Union of Operating Engineers Loc. 150, AFL-CIO*, 3 F.4th 866, 875 (6th Cir. 2021) ("A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory."); *Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 447 (6th Cir. 2014) (requiring defamation allegations to "identify where, when, or to whom the alleged defamatory words were published . . . and the exact language alleged to be defamatory[.]").  Thus, this court must follow the Sixth Circuit's conclusions that defamation claims should state with specificity the alleged defamatory language, and finds persuasive its unpublished opinion requiring that plaintiffs must also identify where, when, or to whom the defamatory words were published.

## 2. Statute of Limitations

Defendants also argue that most of the alleged defamatory statements central to counts I and II of the amended complaint are barred by the one-year statute of limitations for defamation and false light claims. (ECF No. 12, PageID.1243). Plaintiffs counter that each publication of a libelous or slanderous statement is an independent action, and that Defendants continuously posted the alleged defamatory statements over multiple platforms within one year of the date of Plaintiffs' complaint. (ECF No. 13, PageID.1525–26). Therefore, Defendants' acts are actionable and not precluded by the statute of limitations. (*Id.*). Defendants point out, however, that LEOSU did not allege in the FAC that Defendants republished any allegedly defamatory statements, so Plaintiffs' argument about republication is of no moment. (ECF No. 14, PageID.1550–51).

As already stated, in Michigan, a plaintiff must plead defamation with specificity, including "the exact language that the plaintiff alleges to be defamatory." *Adamo*, 3 F.4th at 875. *See also Bhan*, 579 F. App'x at 447 (requiring defamation allegations to "identify where, when, or to whom the alleged defamatory words were published . . . and the exact language alleged to be defamatory[.]"); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020) (quoting *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 299 (Mich. Ct. App. 1991)) (defamation claims should plead "the allegations with

respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words.").

Pursuant to M.C.L. § 600.5805(11), there is a one-year statute of limitations for defamation claims, starting from the date that the alleged defamatory statement was made.  However, "each publication of a libelous or slanderous statement [is] independently actionable." *Redmond v. Heller*, 957 N.W.2d 357, 368 (Mich. Ct. App. 2020).  Therefore, Defendants can be liable for each original publication of a defamatory statement and any republishing of alleged defamatory statements that occurred within the one-year statute of limitations.

Plaintiffs filed suit in this matter on September 16, 2020.  (ECF No. 1) Therefore, any statements published prior to September 16, 2019 are barred by the statute of limitations.  Plaintiffs listed several internet websites in their FAC which included allegedly defamatory postings/publications by Defendants.  (ECF No. 8, ¶ 12).  Plaintiffs also attached several documents to their FAC showing the alleged defamatory statements that Defendants made about them.  (ECF Nos. 8-2, 8-3, 8-4).  Some of the exhibits include the date of publication or the date that Plaintiffs accessed it, while other exhibits do not contain any dates.  (*See id.*).  Defendants also submitted a list to the court with a summary of the alleged defamatory statements that Plaintiffs attached to the FAC, along with the date of publication or

the date that Plaintiffs accessed the alleged defamatory statement.  (ECF No. 12-10).

Upon review of the claimed defamatory statements attached to the FAC, the court finds that the majority of the statements made by Defendants were published or posted before September 6, 2019.  Plaintiffs' FAC alleges that "Defendants continue to publish additional defamatory statements against Plaintiffs on a regular basis."  (ECF No. 8, PageID.544).  However, outside of this statement, the FAC does not allege any corresponding facts or information about any actual republication of defamatory statements that occurred.  Nor did Plaintiffs attach any exhibits to the FAC showing any republications that occurred within the one-year statute of limitations.  (*See* ECF No. 8).  As such, the FAC does not identify the "where, when, or to whom" the alleged defamatory republications occurred, or "the exact language alleged to be defamatory" from the republications.  *Adamo*, 3 F.4th at 875.  Because the FAC fails to identify any alleged republications with the requisite specificity, the court will not consider any republications of alleged defamatory statements when assessing whether the defamatory statements meet the statute of limitations.

Upon review of the exhibits attached to the FAC, it appears that Defendants' list of the postings contained in ECF No. 12-10  accurately reflects the dates of publication of the various alleged defamatory statements.  Correspondingly, any

postings submitted by Plaintiffs that show they were posted or accessed prior to September 6, 2019 are time-barred. The remaining statements that do not show a clear date of publication or date of access, or that were posted after September 6, 2019, are not time-barred at this stage.  The postings identified at ECF No. 8, PageID.555–58, 586, 587, 588, 589, 590, 619, 620, 638, 641, 655–56, 660, 661, 662, and 663 are the claims that are not time-barred.  The remaining claims are time-barred.

For the reasons discussed, the court **GRANTS IN PART AND DENIES IN PART** Defendants' partial motion to dismiss counts I and II of Plaintiffs' FAC for failure to adhere to the statute of limitations.  The court **DISMISSES** the claims regarding statements that Defendants published before September 6, 2019.  The court **WILL NOT DISMISS** the claims regarding statements posted/published after September 6, 2019, nor will it dismiss the claims for statements that do not contain a clear date of publication.

### 3.  Compulsory Counterclaims

Defendants also argue that most of the alleged defamatory statements central to counts I and II of Plaintiffs' FAC are barred because they are compulsory counterclaims that Plaintiffs failed to raise in the 2019 lawsuit.  (ECF No. 12, PageID.1246).   Plaintiffs respond that the defamatory statements alleged in counts I and II of the FAC had not yet occurred at the time they were served with

Defendants' complaint in the 2019 lawsuit. Therefore, they cannot be compulsory counterclaims. (ECF No. 13, PageID.1527).

The defamation claims that Defendants argued were barred by the statute of limitations are the same claims that Defendants argue are barred because they are compulsory counterclaims. (*See* ECF No. 12-10, PageID.1437–40). But the court has already dismissed all of the alleged defamatory statements that Defendants argued were barred by the statute of limitations. *See supra*, Section 2, Statute of Limitations. Accordingly, this court need not address Defendants' compulsory counterclaim argument.

## B. Tortious Interference Claim

Count V of Plaintiffs' amended complaint alleges tortious interference with a contract or advantageous business relationship or expectancy. (ECF No. 8, PageID.546). Plaintiffs allege that Defendants, through their conduct, intentionally and improperly attempted to and/or did interfere with Plaintiffs' contracts and business relationship and expectancies with its union members and potential union members. (*Id.*). The amended complaint alleges that Plaintiffs suffered "substantial economic injury, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities." (*Id.*).

Defendants argue in their motion to dismiss that the court should dismiss this claim because the FAC does not provide them with fair notice of the claim. (ECF No. 12, PageID.1247). Defendants assert that Plaintiffs do not identify a contract with which Defendants allegedly interfered and they also do not identify an advantageous business relationship or expectancy with which Defendants allegedly interfered. (*Id.* at PageID.1248–49). Defendants contend that the FAC does not identify a valid business relationship or expectancy with any party. Rather, it only pleads that Plaintiffs had a possible business relationship/expectancy with an unidentified number of "potential local union members." (*Id.* at PageID.1249). According to Defendants, Plaintiffs only included a tortious interference claim in their FAC because they plagiarized Defendants' complaint from the companion lawsuit. (*Id.* at PageID.1250).

Plaintiffs concede in their response that there was no contract with which Defendants interfered. (ECF No. 13, PageID.1531–32). Nevertheless, they argue that their pleadings show that Defendants intentionally interfered with an advantageous business relationship or expectancy because they had a valid business relationship with all the union members, identified in their exhibit, ECF No. 8-4, to the FAC. (*Id.* at PageID.1532).

Defendants reply that exhibit ECF No. 8-4 does not show that Plaintiffs had valid business relationships with the union members identified in the exhibit

because some of the exhibits are emails sent to SPFPA members, and not LEOSU members. (ECF No. 14, PageID.1554). Defendants also state that the FAC and Plaintiffs' response to their motion does not plead that Plaintiffs had a valid business expectancy with anyone, just that Plaintiffs hoped that its business would grow. (*Id.*).

Plaintiffs have conceded that they do not have a tortious interference with a contract claim; therefore, the court will not consider that claim and it will be dismissed. The court will consider whether Plaintiffs have sufficiently set forth a claim for tortious interference with a business relationship or expectancy.

The elements of tortious interference with a business relationship or expectancy are: "[1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff." *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.*, 821 N.W.2d 1, 3 (Mich. 2012) (quoting *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010)). "[T]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni*, 821 N.W.2d at 3. Moreover, a plaintiff must show that the interference was improper. *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569,

580 (2003), *aff'd*, 472 Mich. 91, 693 N.W.2d 358 (2005).  Improper interference can be shown by proving "(1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship." *Id.*

The FAC states that by publishing and disseminating allegedly false information about Plaintiffs, "Defendants intentionally and improperly attempted and/or interfered with the contracts and business relationship and expectancies between Plaintiffs and its current local union members, and potential local union members." (ECF No. 8, PageID.546).  It further states that because of Defendants' conduct, "Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities." (*Id.*).

Plaintiffs' FAC does not state a valid claim that Plaintiffs had a business expectancy with potential union members.  A valid business "expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni*, 821 N.W.2d at 3.  Applying Michigan law, the Western District of Michigan concluded that the plaintiff pleaded a valid business expectancy when the complaint stated that the plaintiff turned down business offers from two other companies after defendants offered it large bonuses and then defaulted on the bonuses. *Ten Eyck Min. Tr. v. Chesapeake Energy Corp.*, No. 1:14-CV-201, 2014 WL 12478009, at

-14-

*2 (W.D. Mich. Nov. 4, 2014).  Unlike the complaint in *Ten Eyck* which stated that the plaintiff had received other business offers, the complaint here does not plead that a valid business expectancy existed with potential union members.  The FAC does not allege facts demonstrating that there was a reasonable likelihood that Plaintiffs would gain new union members—like, as an example, an allegation that Plaintiffs were projected to win a certain amount of new members in a union election that it did not receive.  Rather, the FAC describes Plaintiffs' subjective hopes that it would gain new members.  Such hopes reflect no more than wishful thinking which is insufficient to show that they had a plausible valid business expectancy in gaining potential new union members.

The court now turns to Plaintiffs' claim that Defendants tortiously interfered with the business relationships Plaintiffs have with current union members.  Defendants contend that the FAC does not establish element one of a tortious interference claim: the existence of valid business relationships.  (ECF No. 12, PageID.1249).  Plaintiffs state that it had valid business relationships with all of the LEOSU union members.  (ECF No. 13, PageID.1532).

Several cases in this district have considered the sufficiency of a complaint's allegations pertaining to the existence of a valid business relationship.  For instance, in *Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*, the plaintiffs alleged that defendants tortiously interfered by engaging with the plaintiffs' car

rental customers and committing defamation per se or defamation against plaintiffs. 55 F. Supp. 3d 977, 985–86 (E.D. Mich. 2014) (Cohn, J.). The plaintiffs also alleged that another defendant made direct contact with one of its customers and asserted fraudulent, derogatory, and defamatory misrepresentations about the quality of plaintiffs' work product. *Id.* at 986. The plaintiffs submitted several affidavits by its customers detailing how defendants engaged with them and attempted to spread negative information about plaintiffs. *Id.* The court found that the plaintiffs had a reasonable expectancy of future business from motorists following accidents, and in particular from its long-standing customers, and had thus adequately pleaded element one of their tortious interference claim sufficiently. *Id.* at 987. The court also concluded that the plaintiffs met the necessary pleading standard regarding the remaining elements to set forth a tortious interference with business relationship claim. *Id.* at 986–87.

Similarly, in *Trarms, Inc. v. Leapers, Inc.*, the court found that the plaintiffs sufficiently pleaded tortious interference where the complaint advanced several "specific allegations of per se wrongful conduct [by the defendants] aimed at [the] [p]laintiffs' existing and potential customers—false arrests, malicious prosecution, defamation . . . and so on." No. 16-14229, 2017 WL 1908787, at *6–8 (E.D. Mich. May 10, 2017) (Cleland, J.). In *Trarms* the plaintiff alleged that the defendants' conduct resulted in decreased sales. *Id.* The court reasoned that similar to the

-16-

*Marks One* court, the plaintiff did not have to "allege a specific terminated relationship from a specific third party" in order to plead a sufficient claim that there was a destruction of a business relationship. *See id.* at *7.  Rather, the court concluded that it was plausible that the defendants took the pleaded adverse actions to "disrupt the [p]laintiffs' ongoing and potential business relationships with its customer base[.]" *Id.* at *8.

Here, the FAC states that Defendants' alleged defamatory statements attempted to and/or actually interfered with Plaintiffs' business relationships with its current union members.  (ECF No. 8, PageID.546).  The FAC states that Defendants' alleged interference caused the "breach, disruption, or termination" of Plaintiffs' business relationships.  (*Id.*).  Plaintiffs' response states that exhibit 8-4 shows that it had valid business relationships with the union members identified in the various emails.  (ECF No. 13, PageID.1532).  Notably, it appears that Exhibit 8-4 is a compilation of various emails sent to SPFPA and LEOSU members, and potentially others.  It is not entirely clear from looking at the exhibits who the LEOSU members are or how many LEOSU members there are.  Thus, exhibit 8-4 is minimally helpful in terms of identifying the union members with whom Plaintiffs had valid business relationships.  But notwithstanding this lack of particularity, it does not appear that Plaintiffs are required to specify their union's membership in the complaint.  And Plaintiffs have averred that defendants sent

defamatory statements to their union members and have provided copies of such emails. As this court is required to accept Plaintiffs' factual allegations regarding their union membership and business relationships as true, Plaintiffs' failure to bring evidence about their union members is not fatal to their tortious interference claim.

The FAC states that Plaintiffs had valid relationships with their local unions and union members.  Accepting Plaintiffs' factual allegations as true, the court concludes that Plaintiffs have successfully pleaded valid business relationships existed between Plaintiffs and their union members.  Although the FAC does not contain any other information regarding the relationships or include exhibits to prove the relationships actually existed, Defendants have not cited authority demonstrating that more is needed in order for a tortious interference claim to survive a motion to dismiss.  Accordingly, Plaintiffs have sufficiently pleaded element one of their tortious interference claim.

Defendants do not argue that Plaintiffs failed to meet the remaining elements of the tortious interference claim in their motion.  (*See* ECF No. 12, PageID.1248–51).  Accordingly, the court need not review the remaining elements for purposes of the motion.

Defendants also argue that Plaintiffs only included a tortious interference claim in their amended complaint because they plagiarized Defendants' amended complaint in the SPFPA lawsuit. (ECF No. 12, PageID.1250–51). Defendants assert that the court should recognize that LEOSU has not performed the requisite factual inquiry into its tortious interference claim, or any of its claims, and that the court should therefore dismiss the tortious interference claim. (*Id.* at PageID.1251). Upon review of Plaintiffs' complaint in this case and the amended complaint in the SPFPA lawsuit, it appears quite evident that Plaintiffs utilized the SPFPA complaint in drafting their complaint. Much of the language in the FAC mirrors or is identical to the language in the SPFPA amended complaint. However, although Plaintiffs likely used the SPFPA complaint as a template for their FAC, Plaintiffs do assert their own facts in their FAC, and as this court has found, several of Plaintiffs' allegations have stated a plausible claim for relief. For these reasons, the court will decline to dismiss Plaintiffs' tortious interference claim.

Plaintiffs brought a tortious interference with contract or advantageous business relationship/expectancy claim. Although no contract existed with which to interfere, the FAC plausibly alleges tortious interference with an advantageous business relationship. Accordingly, the court **DENIES** Defendants' motion to dismiss the tortious interference claim.

### C. Digital Millennium Copyright Act Claim

Count IV of the FAC alleges that Defendants violated the DMCA, 17 U.S.C. § 512(f).  The FAC states that Defendants falsely accused Plaintiffs' website, www.LouMustGo.org, of infringing Defendants' copyright in order to get the website taken down.  (ECF No. 8, PageID.548).  Defendants' argue in their motion that the court should dismiss the DMCA claim because it is a compulsory counterclaim that Plaintiffs should have brought in the companion case to this matter.  (ECF No. 12, PageID.1251).  Plaintiffs respond that their DMCA claim is not a compulsory counterclaim because the claim had not accrued at the time of service of the complaint in the companion case.  (ECF No. 13, PageID.1533–34).  Plaintiffs state that they were served on January 9, 2019, and their DMCA allegations occurred after January 9, 2019.  (*Id.*).  Defendants filed a reply stating that Plaintiffs had notice of their DMCA claim on July 4, 2019, and note that SPFPA did not file its amended complaint in the companion case until August 28, 2019.  (ECF No. 14, PageID.1555).  Therefore, Plaintiffs did have notice of their DMCA claim against Defendants in time to assert it as a compulsory counterclaim in their answer to the amended SPFPA lawsuit on September 11, 2019.

Fed. R. Civ. P. 13(a)(1) states that compulsory counterclaims are claims that the pleader had at the time of service of the complaint.  Plaintiffs state that they were served with the SPFPA lawsuit on January 9, 2019.  The SPFPA lawsuit was

removed to this court on March 12, 2019.  Thus, Plaintiffs appear to be asserting the date of service of the original complaint when it was filed in state court rather than the removal.  However, the issue here is whether Plaintiffs should have filed a compulsory counterclaim alleging a DMCA violation in its answer to the amended SPFPA complaint that they filed on September 11, 2019.

Plaintiffs attached exhibit D to their FAC, which is a message from Wix Support informing Plaintiffs that their website, www.LouMustGo.org, received a complaint for having copyrighted content.  (ECF No. 8-5, PageID.664).  The message is dated July 4, 2019.  (*Id.*).  So according to the date on the message, Plaintiffs' DMCA complaint accrued around July 4, 2019—before the SPFPA plaintiffs filed or served Plaintiffs with the amended complaint in the SPFPA lawsuit.  Accordingly, Plaintiffs' argument that their DMCA claim cannot be compulsory because it had not accrued at the time of service of the SPFPA complaint fails.

As to the compulsory counterclaim issue, Fed. R. Civ. P. 13(a) states that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."  To determine if a claim is a compulsory counterclaim, the Sixth

Circuit follows the "logical relationship test." *Sanders v. First Nat. Bank & Trust Co. in Great Bend*, 936 F. 2d 273, 277 (6th Cir. 1991).  Under this test, the court must determine (1) if "the issues of law and fact raised by the claims are largely the same[;]" and (2) "whether substantially the same evidence would support or refute both claims." *Id.*

Defendants argue in their motion that Plaintiffs' DMCA claim "indisputably" arises from the same occurrence or transaction from which the SPFPA lawsuit arises.  (ECF No. 12, PageID.1252).  They contend that LouMustGo.org contained the same defamatory statements that serve as the primary basis for the SPFPA lawsuit.  (*Id.*).  Defendants then list exhibits for the court to compare, including exhibit 5 to its motion, and exhibit 1 to the amended complaint in the SPFPA lawsuit.  The documents contained in these exhibits are voluminous.  Upon review of the exhibits, it appears that the exhibits only contain webpage screenshots of Spfpacorruption.mystrikingly.com, and some other references to postings other than LouMustGo.org.  It is not apparent to the court how the exhibits show that Plaintiffs' DMCA claim arises from the same transaction or occurrence as the SPFPA lawsuit.  And Defendants do not provide analysis or argument to explain why Plaintiffs should have otherwise brought their DMCA claim as a compulsory counterclaim in the SPFPA lawsuit.  Defendants merely make the conclusory statement that Plaintiffs' DMCA claim "indisputably" arises from the same

occurrence or transaction from which the SPFPA lawsuit arises. Without much in the way of argument or analysis, this court will decline to grant Defendants' request to dismiss Plaintiffs' DMCA claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network*, *Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted)); *see also Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record."). For this reason, the court **DENIES** Defendants' partial motion to dismiss Plaintiffs' DMCA claim.

## V. CONCLUSION

For the reasons discussed herein, the court will **GRANT IN PART AND DENY IN PART** Defendants' partial motion to dismiss. The court **DISMISSES** the majority of the defamation and false light claims identified in its FAC as detailed in this order, but **DOES NOT DISMISS** the defamation and false light claims for any statements posted after September 6, 2019 or for statements with an unclear date of publication. The court **DISMISSES** Plaintiff's tortious

-23-

interference with a contract claim, but not its tortious interference with business

relationships claim.  The court **DOES NOT DISMISS** Plaintiffs' DMCA claim.

SO ORDERED.

Dated:          August 18, 2021

s/Stephanie Dawkins Davis
Hon. Stephanie Dawkins Davis
United States District Court Judge